UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------X

MARSHA FALCHENBERG,

                    Plaintiff,              04 Civ. 7598

          -against-                         AMENDED OPINION

NEW YORK STATE DEPARTMENT OF
EDUCATION, STATE OF NEW YORK, and
NATIONAL EVALUATION SYSTEMS, INC.
a/k/a NYSTE PROGRAM,

                    Defendants.

-----------------------------------X

A P P E A R A N C E S :

Attorneys for Plaintiff

          NATHANIEL B. SMITH, ESQ.
          111 Broadway, Suite 1305
          New York, NY   10006

          KRISTIAN KARL LARSEN, ESQ.
          264 West 40th Street, 18th Floor
          New York, NY   10018

Attorneys for Defendant
National Evaluation Systems, Inc.

          ROGERS & HARDIN LLP
          2700 International Tower, Peachtree Center
          229 Peachtree Street, N.E.
          Atlanta, GA    30303-1601
          By:  Phillip S. McKinney, Esq.

          MORGAN, LEWIS & BOCKIUS, LLP
          101 Park Avenue
          New York, NY   10178
          By:  Debra S. Morway, Esq.
               Melissa C. Rodriguez

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/10/08

Attorney for Defendants
State of New York and New York State
Education Department (s/h/a New York
State Department of Education _____ _____

ANDREW M. CUOMO
Attorney General of the State of New York
120 Broadway
New York, NY  10271
By:  Antoinette W. Blanchette,
     Assistant Attorney General

**Sweet, D.J.**

## I.    INTRODUCTION

Defendant    National    Evaluation    Systems,    Inc.,    a
business of NCS Pearson, Inc. ("NES"), the State of New York
(the "State") and New York State Education Department ("SED")
(s/h/a New York State Department of Education) (State of New
York and SED, collectively, "State Defendants") (NES and State
Defendants, collectively, "Defendants") have moved for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure against plaintiff Marsha Falchenberg ("Falchenberg" or
the "Plaintiff").

Falchenberg has cross-moved under the same rule to
dismiss the fifth through twelfth affirmative defense of NES and
the fifth, seventh and eighth defense of the State and SED.
Falchenberg has also moved to amend her complaint to add a state
official as an individual defendant.  For the reasons set forth
below, the Defendants' motion is granted and Falchenberg's
motions are denied.

In    this    hard    fought    and    well-litigated    action,
Falchenberg, disabled by dyslexia, has sought to establish that

2

Defendants have denied her accommodations which might have permitted her to continue as a New York City public school teacher. Sad to say, her efforts, like those of many test takers, have been defeated by the requirement to spell and punctuate.

## II.  PRIOR PROCEEDINGS

Falchenberg filed a complaint (the "Original Complaint") against the New York City Department of Education ("DOE"), the City of New York (the "City"), and Defendants on September 24, 2004, alleging that all the named entities discriminated against her in violation of the Americans with Disabilities Act, 42 U.S.C. 12101 et seq. ("ADA"), the Rehabilitation Act, 29 U.S.C. 794 ("Rehab Act"), the New York State Human Rights Law, New York Executive Law § 296 ("SHRL"), and the New York City Human Rights Law, New York Administrative Code § 8-107 ("CHRL"), or were liable for aiding and abetting a violation of the aforementioned statutes.

The DOE and the City (collectively, the "City Defendants") moved to dismiss the Original Complaint against them, and by opinion of July 1, 2005, Falchenberg v. New York City Dep't of Educ., 375 F. Supp. 2d 344 (S.D.N.Y. 2005) (the

3

"July 1 Opinion"), the motion was granted and all claims against the City Defendants were dismissed.

In her amended complaint (the "Amended Complaint"), filed on July 26, 2005, Falchenberg reasserted against the remaining Defendants all but one of the claims brought in the Original Complaint. The single claim that was not included in the Amended Complaint was an employment discrimination claim pursuant to Title I of the ADA.

Discovery has been completed. The cross-motions for summary judgment were heard and marked fully submitted on December 5, 2007, and the motion to amend on January 16, 2008.

**III. FACTS**

The facts are set forth in the parties' Rule 56.1 Statements, the Defendants' Counterstatement, attached affidavits and memoranda of law, and are not in dispute except as noted below.

Falchenberg was born and raised in New York City and had undiagnosed reading problems in elementary school and high school.

4

In 1986, 12 years after graduating from high school, Falchenberg started attending college classes at the University of Oslo in Norway. In 1992, she was diagnosed as dyslexic. In 1998, after taking college courses for over 10 years, Falchenberg graduated from the University of Oslo with a B.A. in English and History. After graduating, she continued her studies with post-graduate courses for one year in Education.

In 2000 Falchenberg returned to the United States. For the academic year of September 2001 to June 2002, she taught science to all grades at P.S. 106, a public school in Brooklyn. For the academic year of September 2002 to June 2003, she was the regular classroom teacher for a third grade class at P.S. 384, another Brooklyn Public School, providing instruction in English, Math, Science, and Social Studies. For both positions Falchenberg received satisfactory performance reviews.

SED is a statutory agency of the State of New York created pursuant to New York Education Law § 101 charged with the general management and supervision of all public schools and all of the educational work in the State of New York, including "the examination and certification of teachers employed in all public schools of the state." N.Y. Educ. Law § 3004(1).

NES develops and administers customized teacher certification testing programs under contracts with a number of state education agencies and departments, including SED. NES receives no federal financial assistance and is not a public entity.

Under a contract with SED, NES developed, administers and scores the New York State Teacher Certification Examinations ("NYSTCE"), which include approximately 58 different tests. The Liberal Arts and Sciences Test ("LAST") is one of those tests. Candidates for public school teacher certification in the State of New York are required by New York law to pass the LAST (among other examinations and certification requirements) in order to become certified teachers. The explicit purpose of the NYSTCE tests (including the LAST) is to help identify for certification those candidates who have demonstrated the appropriate level of knowledge and skills that New York educators have determined to be important for performing the responsibilities of a teacher in New York State public schools.

The LAST is a multi-faceted examination designed to test primarily in five areas of knowledge and skills: (1) scientific, mathematical, and technological processes; (2)

6

historical and social scientific awareness; (3) artistic expression and the humanities; (4) communication and research skills; and (5) written analysis and expression. Each test form for the LAST contains approximately 80 multiple-choice test questions and one constructed response (written) assignment.

The fifth part of the LAST, entitled "Written Analysis and Expression," requires the examinee to "prepare an organized, developed composition in edited American English in response to instructions regarding audience, purpose, and content." Affidavit of Melissa C. Rodriguez ("Rodriguez Aff."), Ex. 6 at 15. The written assignment is expected to be about 300-600 words in length, and represents approximately 20% of the test score on LAST.

The examinee's response to the written assignment is evaluated on the basis of several criteria, among them the following:

> STRUCTURE AND CONVENTIONS: Express oneself clearly and without distractions caused by inattention to sentence and paragraph structure, choice and use of words, and mechanics (i.e., spelling, punctuation, capitalization).

Rodriguez Aff., Ex. 6 at 58.

The examinee's response is required to conform to the conventions of edited American English. It is required to be the examinee's original work, written in his or her own words, and not copied or paraphrased from some other work. The examinee is directed to write about the assigned topic, and to use multiple paragraphs.

The LAST written assignment is evaluated and scored on a 4-point scale, with 4 being the highest score and 1 being the lowest. Each of the four possible scores is based on consideration of a number of factors, including spelling, punctuation, capitalization, and paragraphing. For example, a "4" response is described in the LAST scoring scale in pertinent part as follows:

> The response is free of distracting flaws in sentence structure (e.g., subject-verb disagreements, run-on sentences) and paragraph structure (e.g., lack of paragraph breaks to coincide with thought transitions), shows proficient use and choice of words, and avoids disruptive mechanical errors (e.g., inappropriate capitalization, misspellings of common words).

Rodriguez Aff., Ex. 6 at 69.

Proper construction of paragraphs and sentences, proper use of grammar and punctuation, spelling, capitalization and reading comprehension are set forth as scoring criteria in

8

the LAST Preparation Guide and Registration Bulletins as well as other publicly available documents on SED's and NES's respective websites.

On May 6, 2002, Falchenberg registered with NES to take the LAST which was scheduled to be given on July 20, 2002. She submitted an "alternative arrangement request" form to NES, identifying herself as dyslexic and asking for a "dictionary, extra time, frequent breaks, [and an] oral exam." Five weeks later, NES denied Falchenberg's requests.

NES told Falchenberg that a July 8, 1998 report and evaluation of her dyslexia by the Learning Disabilities Unit of the State University of New York's College of Optometry (the "SUNY Report") was too old. According to Falchenberg, the SUNY Report was timely.

In October and December 2002, Falchenberg underwent a complete neuropsychological evaluation at the Derner Institute of Advanced Psychological Studies at Adelphi University in New York. The following month, on January 31, 2003, the Derner Institute issued its report (the "Derner Report") confirming the SUNY Report's diagnosis of dyslexia with a reading disability, and recommending oral administration of tests. On March 8,

9

2003, Falchenberg submitted the Derner Report to NES for the next administration of the LAST, scheduled for May 10, 2003. Falchenberg renewed her prior request, seeking additional accommodations including added time and frequent breaks, and submitted a follow-up letter by the doctor who prepared the Derner Report.

NES rejected Falchenberg's request for accommodation, stating that a dictionary would "fundamentally alter the measurement of the skills the examination is intended to test." Declaration of Nathaniel B. Smith in Support of Plaintiff's Cross-Motion for Summary Judgment, Ex. 3. A "reader" (not an oral examination) was also rejected because the "[d]ocumentation submitted does not support the requested accommodation." Id.

The NES outside consultant, Dr. Tom E.C. Smith ("Dr. Smith") testified that the SUNY Report supported Falchenberg's request for a reader and that if he had seen the SUNY Report at the time his recommendation to deny the reader would not have been the same.

Falchenberg did not take the May 10, 2003 administration of the LAST. Falchenberg registered for the next administration date, July 19, 2003, and appealed the denial of

her accommodation requests. According to Falchenberg, the personnel of NES and SED who denied her appeal were unqualified. Upon a request for reconsideration, NES granted Falchenberg a reader and extra time but again denied her request for an oral examination.

On August 16, 2003, Falchenberg again registered for the next administration of the LAST on October 18, 2003 and specifically requested a reader, a scribe, extra time and an oral examination.

Falchenberg also sought a temporary exemption or waiver from SED, NES or Falchenberg's employer, the DOE,[1] from the requirement that Falchenberg pass the LAST in order to keep her job. Those efforts failed, and on September 2, 2003, the DOE terminated Falchenberg because she had not passed the LAST.

On September 2, 2003, the transcriber request was approved. On September 16, 2003, NES notified Falchenberg that she would be provided with the following accommodations:

---

[1] This Court's original opinion of June 19, 2008, incorrectly stated that Falchenberg was employed by SED. The record is clear, and both parties agree, that Falchenberg's employee was the New York City Department of Education. See Letter from Antoinette W. Blanchette, Assistant Attorney General, State of New York, to Court (June 27, 2008).

11

(1) a test administrator would read each question to her;

(2) a test administrator would transcribe her responses to the written portion of the LAST, but Plaintiff would be responsible for indicating spelling, punctuation, capitalization, and paragraphing;

(3) Plaintiff would be allowed to bring a lunch and take breaks as needed;

(4) Plaintiff would be provided with a separate room; and

(5) Plaintiff would be allowed a full testing day to complete the test (a total of 9 hours, rather than the standard 4 hour session).

Rodriguez Aff., Ex. 7.

Falchenberg did not appear for, and did not take, the LAST on October 18, 2003, nor has she sought to take the test since that date. She contends that the Defendants' accommodations, which require that she "dictate spelling and grammar," do not amount to a reasonable accommodation of her disability.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see

12

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004). The courts do not try issues of fact on a motion for summary judgment, but, rather, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Resid. Servs., L.P., 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all

13

reasonable inferences against the moving party. See Matsushita
Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587
(1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002).
However, "the non-moving party may not rely simply on conclusory
allegations or speculation to avoid summary judgment, but
instead must offer evidence to show that its version of the
events is not wholly fanciful." Morris v. Lindau, 196 F.3d 102,
109 (2d Cir. 1999) (quotation omitted).

## V.   DISCUSSION

## A.   Discrimination on Basis of
     Disability Has Not Been Established

          The standards adopted by Titles II and III of the ADA
and the Rehabilitation Act are, in most cases, the same, and the
courts routinely consider the merits of such claims together.
See Powell v. Nat'l Bd. Of Med. Exam'rs, 364 F.3d 79, 85 (2d
Cir. 2004); Henrietta D. v. Bloomberg, 331 F.3d 261, 273 (2d
Cir. 2003). In order to establish a prima facie case under the
Acts, Falchenberg must show: (1) she is an individual with a
disability within the meaning of the statute; (2) Defendants had
notice of her disability; (3) she was otherwise qualified to
meet the program requirements; and (4) Defendants refused to

14

make reasonable accommodations. Hartnett v. Fielding Graduate Inst., 400 F. Supp. 2d 570, 576 (S.D.N.Y. 2005) aff'd in part and rev'd in part, 198 Fed. Appx. 89 (2d Cir. 2006). The only element at issue on this motion is whether Defendants refused to make reasonable accommodations for Falchenberg's disability.

Disabled individuals are entitled to "reasonable accommodations" that permit them to have access to and take a meaningful part in public services and public accommodations, Powell, 364 F.3d at 85, but "a defendant need not make an accommodation at all if the requested accommodation 'would fundamentally alter the nature of the service, program, or activity.'" Id. at 88 (quoting 28 C.F.R. § 35.130(b)(7)). Specifically as to testing, 28 C.F.R. § 36.309(b)(1)(i) requires that examinations be

selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure) . . . .

Where an examinee seeks an accommodation that would preclude accurate evaluation of abilities measured by the test,

15

denial of the requested accommodation is not unlawful. Powell, 364 F.3d at 89; 28 C.F.R. § 36.309(b)(3) (accommodations need not be made if they would "fundamentally alter the measurement of the skills or knowledge the examination is intended to test"). See also Florida Bd. of Bar Exam'rs re S.G., 707 So.2d 323, 325 (Fl. 1998) ("A modification in the scoring of an exam is, by its very nature, a modification which 'fundamentally alters the measurement of the skills or knowledge the examination is intended to test' . . . [and] is not required under the ADA." (quoting 28 C.F.R. § 36.309(b)(3)).

In Jacobson v. Tillman, 17 F. Supp. 2d 1018 (D. Minn. 1998), the plaintiff claimed the Minnesota Board of Teaching had discriminated against her on the basis of her disabilities, dyslexia and dyscalculia, by refusing to award her a license to teach after she failed the math requirement of the Minnesota Teacher Qualification Test numerous times. The District Court found that the plaintiff's request for waiver of the math portion of the test sought an "unreasonable modification that would fundamentally alter the nature of Minnesota's certification of qualified individuals . . . to teach the children of the State." Id. at 1026. The Court noted that the State, which must publicly validate the competency of teachers by issuing a license, is "entitled to demand and receive an

objective demonstration of competence" and the plaintiff was "simply unable to objectively demonstrate math competence by passing a properly chosen and administered test." Id. at 1025.

Demonstration of the examinee's ability to spell, punctuate, capitalize and paragraph is an inherent part of the LAST. Falchenberg seeks an accommodation that would permit her to avoid having to demonstrate these skills. Falchenberg's request thus seeks a modification that would fundamentally alter the nature of the LAST.

> The relevant statutes . . . mandate reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled; it does not authorize a preference for disabled people generally. . . . The obligation to make reasonable accommodation . . . does not extend to the provision of adjustments or modifications that are primarily for the personal benefit of the individual with a disability.

Hartnett, 400 F. Supp. 2d at 576 (quotations and alterations omitted). All candidates for teacher certification who take the LAST in New York, disabled or non-disabled, are evaluated according to the same standards, including spelling, punctuation, capitalization, and paragraphing. Exempting Plaintiff from demonstrating the same level of competency in these skills as all other examinees would not "put [her] on an even playing field with the non-disabled." Id.

17

Falchenberg disputes the proposition that her requested accommodation would conflict with the goals of the LAST, but fails to rebut the evidence offered by Defendants that the LAST measures every candidate's spelling, punctuation, capitalization, and paragraphing. Contrary to Falchenberg's contentions, the LAST essay represents approximately 20% of the LAST score. The scoring scale for the essay appears in the Preparation Guide and each of the four possible scores for a candidate's essay expressly includes consideration of the candidate's "mechanical skills," the definition of which includes "misspellings of common words." If a skill is measured, it is fundamental to the examination at issue, and a requested accommodation that would waive measurement of the skill need not be granted as a matter of law. See 28 C.F.R. §36.309(b)(1)(i).

Falchenberg seeks to rebut the evidence that the LAST evaluates examinees' spelling, punctuation, capitalization and paragraphing, contending that "not one witness had knowledge" as to whether these skills are fundamental to the LAST. Plaintiff's Memorandum of Law Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp.") 4. She seeks to rely on the deposition testimony of NES's designated corporate deponent, who, in response to a question seeking information on "how NES

18

scores or treats spelling, punctuation, capitalization, or other mechanics of the writing process," stated that she had no such knowledge. Id. at 5. However, Plaintiff's 30(b)(6) Notice did not identify the particulars of scoring as a topic of the examination. "[I]f a party opts to employ the procedures of Rule 30(b)(6), F.R.Civ.P., to depose the representative of a corporation, that party must confine the examination to the matters stated 'with reasonable particularity' which are contained in the Notice of Deposition." Paparelli v. Prudential Ins. Co. of Am., 108 F.R.D. 727, 730 (D. Mass. 1985) (quoting Fed. R. Civ. P. 30(b)(6)). Questions and answers exceeding the scope of the 30(b)(6) notice will not bind the corporation, but are merely treated as the answers of the individual deponent. See Detoy v. City & County of San Francisco, 196 F.R.D. 362, 367 (N.D. Cal. 2000); accord King v. Pratt & Whitney, 161 F.R.D. 475, 467 (S.D. Fla. 1995) aff'd, 213 F.3d 646 (11th Cir. 2000). As these courts noted, "if the [30(b)(6)] deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem." Detoy, 196 F.R.D. at 367; King, 161 F.R.D. at 467.

Falchenberg also challenges the proposition that the ability to "dictate" or "memorize" the spelling of words is fundamental to the LAST. Disputing Defendants' assertion that

19

"[i]t is simply not possible to test Plaintiff's spelling skills without requiring that she spell," Pl. Opp. 9, Falchenberg contends that she should only have to demonstrate that she can use external spelling aids such as dictionaries or spell checkers.

Falchenberg never requested the use of a spell checker as an accommodation for the LAST. Her challenge to Defendants' prohibition of the use of a spell checker relies on the argument that "all of the other 49 States in the nation" allow a spell checker as an accommodation for teacher certification tests. Id. at 10. There is no evidence in the record that any of the tests alluded to by Falchenberg evaluate examinees on the basis of their spelling. Obviously, the use of a spell checker on an examination that does not test spelling would not fundamentally alter the measurement of the skills or knowledge the examination is intended to test. Without evidence that such tests actually test spelling, Plaintiff's attempt to analogize them to the LAST fails.

Falchenberg has also challenged the proposition that the skills measured by the LAST are "justified by anything that a teacher actually does in the classroom." Pl. Opp. 12. It has already been held that "the certification examination is not

20

an issue in this case. There is no allegation that the certification test itself is discriminatory . . . ." July 1 Opinion, at 348-49.

Furthermore, Falchenberg herself has admitted in deposition that spelling, punctuation, capitalization, and paragraphing are important skills that students should learn, that teachers must be able to teach these fundamental skills, and that teachers must be able to demonstrate they possess, and are capable of teaching, these skills.

Finally, Plaintiff's challenge to the basis, objectives, or grading criteria of the LAST fails in light of the academic deference doctrine. The professional judgment of educators making academic decisions is afforded "great deference." Powell, 364 F.3d at 88; see also Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 225 (1985). Where a program is designed to "achieve definite pedagogical objectives," this Court will not "substitute its judgment for that of experienced education administrators and professionals in assessing whether the program does in fact meet its pedagogical objectives." Maczaczyj v. New York, 956 F. Supp. 403, 409 (W.D.N.Y. 1997).

## B. The Aiding and Abetting Claims Are Dismissed

Because aiding and abetting is a viable theory only where an underlying violation has been shown, see United States v. Reifler, 446 F.3d 65, 96 (2d Cir. 2006) (government must prove commission of underlying crime to sustain aiding and abetting conviction), Falchenberg's aiding and abetting claim is dismissed as well.

## C. NES is Not Subject to the Rehabilitation Act or Title II of the ADA

The Rehabilitation Act prohibits discrimination by any "program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a); see also Powell, 364 F.3d at 85 ("[T]he focus of the Rehabilitation Act is narrower than the ADA's in that its provisions apply only to programs receiving federal financial assistance."). Defendant NES does not receive federal financial assistance for the LAST or for any other purpose.

Title II of the ADA (Plaintiff's Second Claim for Relief) only applies to "public entities," defined as "(A) any state or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States

or local government . . . ." 42 U.S.C. § 12131(1). NES is not a public entity as defined by the ADA.

## C. The State Defendants Are not Subject to Title III

Falchenberg, by her third claim for relief, asserts claims against State Defendants pursuant to Title III of the ADA. Am. Compl. ¶ 33. However, "ADA Title III expressly does not apply to public entities, including local governments." Bloom v. Bexar County, 130 F.3d 722, 726 (5th Cir. 1997). A claim under Title III of the ADA can only be asserted against a private entity engaged in the provision of public accommodations, such as an inn, hotel or restaurant. See 42 U.S.C. §§ 12181(7), 12182. Title III is not applicable to public entities. See Bloom, 130 F.3d at 726 (dismissing ADA Title III claim asserted against public entity); DeBord v. Board of Educ. of the Ferguson-Florissant Sch. Dist., 126 F.3d 1102, 1106 (8th Cir. 1997) (same), cert. denied, 523 U.S. 1073 (1998); Sandison v. Michigan High Sch. Athletic Ass'n, 64 F.3d 1026, 1036 (6th Cir. 1995) (same).

## D. The Eleventh Amendment Bars the Title II and State Claims Against the State Defendants

The Eleventh Amendment of the Constitution bars federal suits against a State absent the State's waiver of its sovereign immunity or an abrogation of that immunity by Congress. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) (Eleventh Amendment bars suits against State "unless the State has waived its immunity . . . or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity"). This bars applies to suits that seek money damages, see Edelman v. Jordan, 415 U.S. 651, 663 (1974) or injunctive relief, see Cory v. White, 457 U.S. 85, 90-91 (1982).

Eleventh Amendment immunity "extends . . . not only to a state, but also to entities considered arms of the state." McGinty v. New York, 251 F.3d 84, 95 (2d Cir. 2001) (quotation omitted). SED is an arm of the State of New York, and thus enjoys Eleventh Amendment immunity. See United States v. City of Yonkers, 96 F.3d 600, 619 (2d Cir. 1996) (dismissing § 1983 claims against SED on Eleventh Amendment grounds). Consequently, both the State of New York and SED are entitled to Eleventh Amendment immunity from Plaintiff's claims, absent a waiver or abrogation thereof.

24

The State Defendants have moved to dismiss Falchenberg's Title II claim as barred by the Eleventh Amendment. In United States v. Georgia, 546 U.S. 151, 154 (2006), the Supreme Court directed that in evaluating the proper application of the Eleventh Amendment to Title II claims, the courts should determine, on a claim-by-claim basis:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

546 U.S. at 159. This Court has already determined that the State Defendants are entitled to summary judgment on the question of whether their conduct violated Title II. That holding obviates the need for a full Eleventh Amendment analysis.

Falchenberg's fourth, fifth and sixth claims for relief assert claims against State Defendants under the NYSHRL and NYCHRL. Am. Compl. ¶¶ 35, 37, 40. However, there is no valid waiver or abrogation of immunity with respect to these claims. See Tuckett v. N.Y. State Dep't of Taxation and Fin., No. 99 Civ. 0679, 2000 WL 1028662, at *2 (S.D.N.Y. Jul. 26, 2000) ("[N]othing in the text of the [NYS]HRL constitutes a

25

waiver of immunity or consent to be sued."); Leiman v. State of
New York, 2000 WL 1364365, at *7 (S.D.N.Y. Sept. 21, 2000)
("[E]ven if it were possible for New York City to waive New York
State's immunity, plaintiff could not demonstrate that the
Administrative Code contains the explicit language needed to do
so."), aff'd, 2001 WL 363520 (2d Cir. Apr. 11, 2001).

## E.  Falchenberg's Motion to Amend Is Denied

After being served with a responsive pleading, a party
may amend its pleading "only with the opposing party's written
consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Leave
to amend a complaint pursuant to Rule 15 should not be denied
unless there is evidence of undue delay, futility, bad faith, or
undue prejudice to the non-movant.  See Foman v. Davis, 371 U.S.
178, 182 (1962); Milanese v. Rust-Oleum Corp, 244 F.3d 104, 110
(2d Cir. 2001).

Where a cross-motion to amend the complaint is brought
in response to a motion for summary judgment,

> even if the amended complaint would state a valid
> claim on its face, the court may deny the amendment as
> futile when the evidence in support of the plaintiff's
> proposed new claim creates no triable issue of fact
> and the defendant would be entitled to judgment as a
> matter of law under Fed. R. Civ. P. 56(c).

Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001);
see also Azurite Corp. Ltd. v. Amster & Co., 844 F. Supp. 929,
939 (S.D.N.Y. 1994), aff'd 52 F.3d 15 (2d Cir. 1995).

The claims that Falchenberg would add against
Commissioner Mills rely on the same factual and legal predicates
as her claims against the Defendants, upon which they are
entitled to summary judgment. Falchenberg's proposed amendments
of the Complaint thus do not create triable issues of fact and
her motion to amend is denied as futile.

## Conclusion

For the foregoing reasons, Defendants' Motion for
Summary Judgment is granted and Falchenberg's motions are
denied.

Enter judgment on notice.

It is so ordered.

**New York, N.Y.**
**July  9  , 2008**

ROBERT W. SWEET
**U.S.D.J.**

27